UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO VELASQUEZ,

Plaintiff,

-v-

LAURA & MELINDA, INC., a New York corporation d/b/a Laura & Melinda, et al.,

Defendants.

CIVIL ACTION NO. 25 Civ. 9844 (VSB) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Ricardo Velasquez ("Plaintiff"), who uses a wheelchair, brings this disability discrimination action against Defendants Laura & Melinda, Inc. d/b/a Laura & Melinda ("L&M"), 7115 International Inc. d/b/a 7115 By Szeki ("7115," with L&M, the "Tenants"), and Venter Trace Realty LLC ("Venter," with the Tenants, "Defendants"), alleging that Defendants failed to provide accessible storefronts in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. ("ADA"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(4)(a) (the "NYCHRL"); and the New York State Human Rights Law, NYS Exec. Law § 296(2)(a) ("NYSHRL"). (Dkt. No. 1 (the "Complaint")).

On May 28, 2026, L&M filed a motion to dismiss arguing that Plaintiff lacks standing and fails to state a claim. (Dkt. Nos. 39–40 (the "First MTD")). On June 17, 2026, 7115 filed a motion to dismiss on the same grounds. (Dkt. Nos. 46–47 (the "Second MTD," with the First MTD, the "MTDs")). In the MTDs, the Tenants argue that leave to amend should be denied, but if the Court were to grant leave to amend, "the Court should order limited, jurisdictional discovery to resolve

the status of Plaintiff's standing to sue." (Dkt. Nos. 40 at 24; 47 at 10 (the "Jurisdictional Discovery Request")).

On July 16, 2026, rather than oppose the MTDs, Plaintiff filed a motion to amend his Complaint "to clarify his standing, and address the relevant issues in [the MTDs]." (Dkt. No. 55 (the "MTA")). In support of the MTA, Plaintiff submits a proposed amended complaint. (Dkt. No. 55-1 (the "PAC")). The Tenants oppose the MTA on the grounds of futility, delay, and bad faith, but in the alternative, renew their Jurisdictional Discovery Request. (Dkt. Nos. 58–59).[1] The Honorable Vernon S. Broderick has referred the MTA to the undersigned. (Dkt. No. 9). For the reasons set forth below, we **GRANT** the MTA, but because we are skeptical as to the accuracy of Plaintiff's allegations supporting his standing to sue, we also **GRANT** the Jurisdictional Discovery Request.

## II. BACKGROUND

### A. Factual Background[2]

Plaintiff is an individual who resides in New York and uses a wheelchair. (Dkt. No. 1 ¶ 4). The Tenants are New York corporations that lease the real property at 157 Rivington Street, New York, New York (the "Property"), a Lower East Side building where L&M runs a tailor shop and 7115 runs a clothing design studio. (Id. ¶ 5; see Dkt. Nos. 40 at 9; 47 at 7). Venter is the owner and lessor of the Property. (Dkt. No. 1 ¶ 5). Plaintiff, who lives in the Bronx, alleges that the Property is 10.6 miles from his home and that he "visits the area of [the] Property on a regular basis[.]" (Id. ¶ 14). On November 6, 2025, Plaintiff visited the Property "with the intention of

[1] Given that 7115 "joins [L&M's] opposition" to the MTA, we consider the Tenants' arguments in opposition to the MTA together. (Dkt. Nos. 58-59).

[2] We draw the following facts primarily from the Complaint. (Dkt. No. 1).

using Defendants' facilities for clothing alterations[,]" but "was denied full and equal access to, and full and equal enjoyment of, the facilities at [the] Property" due to "architectural barriers[.]" (Id. ¶¶ 4, 14). Specifically, Plaintiff alleges that the Tenants failed to: (i) "provide an accessible entrance, due to a step at said entrance, without an ADA-compliant ramp and/or wheelchair lift[;]" (ii) "provide a safe and accessible means of egress from the [Property][;]" (iii) "provide a securely attached floor mat at the interior [] entrance, throughout the [Property]" [sic]; (iv) "provide adequate directional and accurate informational signage" throughout the Property; and (v) provide signage "addressing people with disabilities, telling them that accessible services are provided[.]" (Id. ¶ 16).

Plaintiff therefore alleges that Defendants unlawfully discriminated against him and that that he "suffered an injury in fact" because he was, and continues to be, unable to use the facilities at the Property due to the "architectural barriers which remain at the [] Property," and that he "shall promptly visit the [] Property in the future once it is made accessible and ADA compliant[.]" (Dkt. No. 1 ¶¶ 14, 33).

**B. Procedural Background**

On November 25, 2025, Plaintiff filed the Complaint. (Dkt. No. 1). On February 27, 2026, after multiple extensions, (Dkt. Nos. 13; 16–17; 19–20; 25), 7115 filed an answer to the Complaint asserting cross claims against L&M and Venter (the "7115 Cross Claims"). (Dkt. No. 27). On May 28, 2026, after additional extensions, (Dkt. Nos. 32; 33; 36), Venter filed an answer to the

Complaint asserting cross claims against L&M and 7115 (the "Venter Cross Claims"). (Dkt. No. 38).[3] That same day, L&M filed the First MTD. (Dkt. Nos. 39–40).

On June 4, 2026, 7115 filed a letter requesting, inter alia, that the Court "apply the same reasoning to the (lack of) factual allegations against 7115" that L&M argued in the First MTD "without further motion practice from 7115[.]" (Dkt. No. 42). The next day, Judge Broderick directed 7115 to "file any Rule 12 motion as to Plaintiff's claims against it separate from [the First MTD]" and to state in its motion which portions of the First MTD it believes applies to 7115. (Dkt. No. 43). On June 17, 2026, 7115 filed the Second MTD. (Dkt. Nos. 46–47).

On July 16, 2026, rather than oppose the MTDs, Plaintiff filed the MTA "to clarify his standing, and address the relevant issues in [the MTDs]" and submitted the PAC. (Dkt. Nos. 55; 55-1). Specifically, Plaintiff proposes to add allegations that: (i) he lives "less than a 30 minute drive" from the Property; (ii) he "travels by the area" of the Property "at least twice each month[;]" (iii) L&M is "known for handling complex alterations on a wide range of clothing, from suits and dresses to leather and denim, and praised for their skill in reconstructing garments for a modern fit[;]" (iv) 7115 is a "highly recommended clothing design studio [] founded [] with a focus on creating an artful and robust wardrobe[;]" (v) Plaintiff is a "hop-hop music artist performing at major disability festivals in New York City" and is a "sport shoe and clothing entrepreneur doing business under the brand name Knistkol (www.aliveshoes.com), [who] often requires expert tailoring and clothing repair services and unique embroidering to enhance his brand" and "visits other clothing design studios to learn from other clothing designers to enhance

[3] The Court held in abeyance the deadlines for L&M and Venter to respond to the 7115 Cross Claims and for L&M and 7115 to respond to the Venter Cross Claims pending the Court's decision on the MTDs. (Dkt. Nos. 36; 49).

his brand[;]" and (vi) Plaintiff specifically sought the services of the Tenants because of "many online recommendations" and high ratings including additional positive Yelp reviews from prior customers of the Tenants. (Dkt. No. 55-1 (the "New Allegations"); see Dkt. No. 58-4).[4]

On July 21, 2026, the Tenants opposed the MTA and, in the alternative, renewed their Jurisdictional Discovery Request. (Dkt. Nos. 58–59).[5] On July 24, 2026, Plaintiff filed his reply in further support of the MTA. (Dkt. No. 60).

## III. DISCUSSION

### A. Legal Standards

#### 1. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities[.]" Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) ("Rule [15] reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, and 'mere technicalities' should not prevent cases from being decided on the merits").[6]

Courts in this District have held that leave to amend is not warranted where "(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party." Procter & Gamble Co. v.

---

[4] In opposition to the MTA, L&M submitted a redlined version of Plaintiff's PAC showing the New Allegations. (Dkt. No. 58-4).

[5] Venter has not opposed the MTA.

[6] Internal citations and quotation marks are omitted from case citations unless otherwise noted.

Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent that proper grounds for denying a motion to amend include "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment") (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "An amendment would be futile if the amended complaint could not withstand a motion to dismiss." Tavarez v. Moo Organic Chocolates, LLC, 641 F. Supp. 3d 76, 80 (S.D.N.Y. 2022) (citing Balintulo v. Ford Motor Co., 796 F.3d 160, 164–65 (2d Cir. 2015)). "Ultimately, the grant or denial of an opportunity to amend is within the discretion of the District Court." Tavarez, 641 F. Supp. 3d at 80.

### 2. Standing Under the ADA[7]

"A claim must be dismissed for lack of subject-matter jurisdiction when a plaintiff lacks standing to bring the action under Article III of the U.S. Constitution." Tavarez, 641 F. Supp. 3d at 80 (citing Cortlandt St. Recovery Corp. v. Hellas Telecomm., 790 F.3d 411, 416–17 (2d Cir. 2015)). "A plaintiff bringing a claim pursuant to the ADA in connection with an inaccessible brick-and-mortar location has standing to sue for injunctive relief, as is sought here, [] if (1) the plaintiff allege[s] past injury under the ADA; (2) it [is] reasonable to infer that the discriminatory treatment [will] continue; and (3) it [is] reasonable to infer, based on the past frequency of

[7] "NYCHRL claims are subject to the same standing requirements as the ADA." Tavarez, 641 F. Supp. 3d at 80 n.5.

plaintiff's visits and the proximity of [defendant's business] to plaintiff's home, that plaintiff intend[s] to return to the subject location[.]" Tavarez, 641 F. Supp. 3d at 80.

"A plaintiff must plausibly allege 'a real and immediate threat of future injury' for his or her complaint to meet the third prong." Tavarez, 641 F. Supp. 3d at 80 (citing Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75 (2d Cir. 2022)); see Harty v. West Point Realty, Inc., 28 F.4th 435, 443 (2d Cir. 2022) (concluding that a plaintiff failed to allege standing to bring an ADA claim because, inter alia, he did not allege that he was "using [the defendant's] website to arrange for future travel"). "Courts in this Circuit have recognized that the Second Circuit's recent Calcano decision 'raised the bar appreciably for adequately pleading standing to seek injunctive relief in ADA cases.'" Tavarez, 641 F. Supp. 3d at 81.

"If a plaintiff's Article III standing is 'in issue' at the pleading stage, a Court may allow 'limited discovery on the jurisdictional issue . . . ." Tavarez, 641 F. Supp. 3d at 81 (citing Stepniak v. United Materials, 305 F. App'x 789, 790 (2d Cir. 2009); see Harty v. Simon Prop. Grp., L.P., 428 F. App'x 69, 72 (2d Cir. 2011) (summary order) (stating that if a district court "continues to doubt" whether a plaintiff's "professed intent to return" to a place of public accommodation under the ADA "was genuine, this doubt should be resolved by the court before proceeding further"); see also Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85 (2d Cir. 2006) ("[A] district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits.").

Courts have found that a plaintiff's status as a "serial litigant[,]" where "[e]ach of his complaints uses the same cookie-cutter, fill-in-the-blanks template and follows substantially the

same formula[,]" to raise doubts about whether that plaintiff's standing allegations are genuine. Fernandez v. Buffalo Jackson Trading Co., LLC, No. 24 Civ. 4878 (JPC), 2025 WL 1101478, at *2 (S.D.N.Y. Apr. 14, 2025) (finding plaintiff's prior litigation history of filing "dozens of cases seeking relief under the ADA" in the "past twelve months" provided reason to doubt "accuracy of his allegations"); Velasquez v. Everlast Worldwide, Inc., No. 22 Civ. 9211 (VSB), 2022 WL 16745767, at *1 (S.D.N.Y. Nov. 7, 2022) (in ADA website case, sua sponte raising the issue of whether plaintiff adequately alleged standing where "save for the caption, defendant name, and website name, the complaint is identical to six other complaints that [p]laintiff filed the same day.").[8]

**B. Application**

The Tenants argue that the MTA should be denied because: (i) Plaintiff's proposed amendments are futile; (ii) Plaintiff has delayed raising the New Allegations; and (iii) Plaintiff is engaging in bad-faith litigation tactics that will prejudice the Tenants. (Dkt. Nos. 58–59). In the alternative, the Tenants renew their Jurisdictional Discovery Request. (Dkt. Nos. 58–59). Plaintiff argues that the Court should allow his New Allegations "in the interest of justice since [they] will provide this Court with additional details, including regarding Plaintiff's standing, [and] time and place of visit, which supports Plaintiff's stated claims for relief[;]" that Plaintiff's counsel's "brief delay in responding to the [MTDs] was due to the compelling reason of [Plaintiff's counsel] traveling out of the country in Asia and other various states subsequently[;]" that the MTA "does not prejudice any party since discovery has not even commenced[;]" and that the Tenants failed

[8] Despite the same last name, the plaintiff in Velasquez v. Everlast Worldwide, Inc., No. 22 Civ. 9211 (VSB), 2022 WL 16745767, at *1 (S.D.N.Y. Nov. 7, 2022), is different from Plaintiff.

to show any bad faith. (Dkt. No. 60). Plaintiff does not address the Jurisdictional Discovery Request. (See Dkt. Nos. 55; 60).

As explained below, we find that Tenants have not established delay or bad faith and further find that granting Plaintiff leave to amend the Complaint would not necessarily be futile because the facts contained in the PAC, if accurate, plausibly allege standing. That said, we find Plaintiff's allegations not to be particularly credible given that "[Plaintiff] has filed more than 220 ADA suits since 2015, including more than 151 in the last five years alone[,]" that "[h]e is currently the plaintiff in at least 13 similar cases currently pending in district courts in New York and Connecticut, all against small businesses (and their landlords)[.]" (Dkt. No. 40 at 10 n.5).[9] In addition, "[i]n 2013, another court in this [C]ircuit rebuked [Plaintiff's counsel] for his practice of seeking excessive fees to 'file near-identical pleadings without intermission' and warned that it would refer [Plaintiff's counsel] to the state bar authorities if he 'continue[d] to litigate in this fashion.'" (Id.) See Costello v. Flatman, LLC, No. 11 Civ. 287 (SJ) (VVP), 2013 WL 1296739, at *5–6, 8 (E.D.N.Y. Mar. 28, 2013) (warning Plaintiff's counsel that if he "continue[d] to litigate in this fashion[,]" the Court "will not be shy about informing the appropriate state bar authorities and chief judges across this country"), vacated on other grounds by, 558 F. App'x 59 (2d Cir. 2014).

[9] Velasquez v. First Choice Property Management, LLC, No. 26 Civ. 264 (D. Conn. Feb. 21, 2026); Velasquez v. Subway IP LLC, No. 26 Civ. 265 (D. Conn. Feb. 21, 2026); Velasquez v. Main Wine & Liquor, LLC, No. 26 Civ. 266 (D. Conn. Feb. 21, 2026); Velasquez v. 187 Discount Store & Variety Inc., No. 24 Civ. 03267 (S.D.N.Y. Apr. 29, 2024); Velasquez v. One Cup Of Tea Inc, No. 24 Civ. 4472 (S.D.N.Y. Jun. 11, 2024); Velasquez v. The Uncommons LLC, No. 24 Civ. 9571 (S.D.N.Y. Dec. 15, 2024); Velasquez v. Acai Of NY LLC, No. 25 Civ. 1647 (S.D.N.Y. Feb. 26, 2025); Velasquez v. Chocolate Dip LLC, No. 25 Civ. 4146 (S.D.N.Y. May 16, 2025); Velasquez v. Tamy Decor Corp., No. 25 Civ. 5159 (S.D.N.Y. Jun. 20, 2025); Velasquez v. ZNN Deli Grocery LLC, No. 25 Civ. 5232 (S.D.N.Y. Jun. 24, 2025); Velasquez v. Grey Crescent, LLC, No. 25 Civ. 9842 (S.D.N.Y. Nov. 25, 2025); Velasquez v. Boston Deli & Grocery, Inc., No. 25 Civ. 10575 (S.D.N.Y. Dec. 19, 2025); Velasquez v. Antojitos Del Mangu 3rd Ave Restaurant Corp., No. 26 Civ. 22 (S.D.N.Y. Jan. 2, 2026).

Accordingly, we grant the MTA but also grant the Jurisdictional Discovery Request and stay all discovery other than jurisdictional discovery directed to whether Plaintiff has Article III standing.

### 1. Futility

As stated above, (see §§ I & II.B, supra), the Tenants argued in the MTDs that Plaintiff lacks Article III standing to bring this action, and that his allegations fail to state a claim on which relief can be granted. (Dkt. Nos. 40; 47). The Tenants argue that Plaintiff's New Allegations are futile because they fail to remedy the Complaint's deficiencies in pleading standing under Article III. (Dkt. Nos. 58–59). Specifically, the Tenants argue that the only substantive changes are in paragraph 14(a) of the PAC, where Plaintiff adds that he lives "less than a 30 minute drive" from the Property, which the Tenants argue is untrue, and that he "travels by the area" twice a month, which the Tenants argue is even more vague than Plaintiff's prior assertion in the Complaint that he "visits the area." (Dkt. Nos. 58–59; 58-5).[10] As for Plaintiff's proposed additional positive online reviews and ratings, the Tenants argue that "this is just a pleading tactic Plaintiff's counsel uses in many cases," and in any case, the online reviews are "entirely irrelevant" because "[t]here is no logical connection between the alleged Yelp reviews and Plaintiff." (Dkt. Nos. 58 at 2; 59 at 1). As for Plaintiff's New Allegations concerning his status as a performing artist and "sport shoe and clothing entrepreneur," the Tenants argue that "he still

[10] The Tenants attempt to discredit Plaintiff's allegation that he lives "less than a 30 minute drive" from the Property by submitting a Google Maps estimate showing that "travel from Plaintiff's home to the Property during business hours ranges from 30 to 80 minutes." (Dkt. No. 58 at 2; 58-5). The actual time it takes Plaintiff to travel to the property, however, is a factual dispute that we "will not resolve on a motion to amend." See Adlife Mktg. & Commc'ns Co., Inc. v. Best Yet Mkt., Inc., No. 17 Civ. 2978 (ADS) (ARL), 2018 WL 4568801, at *2 (E.D.N.Y. Sept. 24, 2018). Similarly, the Tenants' references to Plaintiff's website, including their attempts to distinguish Plaintiff's products as "obviously not anything like" the Tenants' products, are also factual disputes that we will not resolve at this stage. Id.

does not allege what he intended to have tailored or embroidered, or why he does not obtain these services that he 'often requires' closer to his home." (Dkt. Nos. 58 at 2; 59 at 1–2). The Tenants further argue that Plaintiff's website (www.aliveshoes.com) appears to contradict his assertions in the PAC given that his products are "'handcrafted in Italy' and shipped directly to consumers[,]" that that Plaintiff only sells "one form of basketball shoe and leather bag that is obviously not anything like the minimalist products sold by 7115." (Dkt. Nos. 58 at 2; 59 at 1–2).

In response to the Tenants' futility arguments, Plaintiff cites the liberal standard to amend in Rule 15(a)(2) and argues that the New Allegations support his standing to assert the ADA claims against Defendants. (Dkt. No. 60 at 1; see Dkt. No. 55).

As to the first requirement for Article III standing, Plaintiff alleges in the PAC that he visited the Property on November 6, 2025 "with the intention of using Defendants' facilities for clothing alterations[,]" which he required because he is a sport shoe and clothing entrepreneur who often requires expert tailoring, clothing repair services, and unique embroidering but "was denied full and equal access to, and full and equal enjoyment of, the facilities at [the] Property" due to "architectural barriers[.]" (Dkt. No. 1 ¶¶ 4, 14). Plaintiff further alleges that he remains interested in the Tenants' services and plans to visit the Property "as soon as it is made accessible and ADA compliant for safe access to wheelchair users . . . ." (Dkt. No. 55-1 at 6; see Dkt. No. 58-4 at 7–8). If accurate, these allegations are just enough to establish past injury. See Sanchez v. NutCo, Inc., No. 20 Civ. 10107 (JPO), 2022 WL 846896, at *2 (S.D.N.Y. Mar. 22, 2022) (concluding that a plaintiff established a past injury because, inter alia, he alleged that he "could not ascertain the price or other details of products on the [w]ebsite because the [w]ebsite was not compatible with his screen-reading software, and the [w]ebsite provided no indication when an item was

successfully added to his online cart") (collecting cases). The Court has significant concerns, however, about the accuracy of the New Allegations. As the Tenants point out, "[a]lthough Plaintiff now alleges he is a performing artist and 'sport shoe and clothing entrepreneur,' he still does not allege what he intended to have tailored or embroidered, or why he does not obtain these services that he 'often requires' closer to his home [in the Bronx]." (Dkt. No. 58 at 2; see Dkt. No. 55-1). Also, it is unclear why Plaintiff waited until after the MTDs to add the New Allegations, which he surely knew when he filed the Complaint. (See Dkt. Nos. 58 at 3; 59).

As to the second standing requirement, we reasonably infer that this discriminatory treatment will continue because the accessibility barriers have not been addressed as of July 16, 2026, the date Plaintiff filed the PAC. (See Dkt. No. 55-1). See also Walters v. Fischer Skis U.S., LLC, No. 21 Civ. 1115 (LEK) (ATB), 2022 WL 3226352, at *3–4 (N.D.N.Y. Aug. 10, 2022) (concluding that it was reasonable to infer that the defendant's discrimination would continue because the plaintiff alleged ongoing accessibility barriers); Tavarez, 641 F. Supp. 3d at 82 ("it is reasonable to infer that this discriminatory treatment will continue" where the "accessibility barriers have not been addressed" as of the date plaintiff proposed his amendments to the complaint).

As for the third standing element, whether Plaintiff adequately alleged his intent to return to the Property once it is rendered accessible, the New Allegations provide additional details that support this element. Specifically, Plaintiff's New Allegations that he lives less than a 30 minute drive from the Property, that he "travels by the area" at least twice each month, and that he is a "hop-hop music artist performing at major disability festivals in New York City" and a "sport shoe

and clothing entrepreneur" who "requires expert tailoring[,] clothing repair[,] and unique embroidery services" and who "visits other clothing design studios to learn from other clothing designers to enhance his brand[,]" along with the additional customer reviews and ratings of the Tenants' businesses all support the reasonable inference that Plaintiff "intends to return to the [Property]" once the architectural barriers are removed. (Dkt. No. 55-1; see Dkt. No. 58-4). See Tavarez, 641 F. Supp. 3d at 81 (granting leave to amend in an ADA website action where proposed amended complaint, inter alia, added details to plaintiff's allegations of his intent to return to defendant's website, specifying "three dates on which [p]laintiff accessed [d]efendant's website, the specific product [p]laintiff allegedly [sought] to buy, his habit of consuming chocolate, and characteristics of [d]efendant's [products] that he finds attractive."). If these New Allegations are true, Plaintiff has alleged sufficient facts to establish standing at this stage. See Walters, 2022 WL 3226352, at *3–4 (concluding that the plaintiff evinced a sufficient intention to return to the defendant's ski equipment website for standing purposes because of his history as a skier, his interest in the sport, and his alleged need to update his ski gear). Given Plaintiff's litigation history and the fact that Plaintiff only alleged the New Allegations after the MTDs, however, we remain skeptical as to their accuracy and will permit limited discovery on that issue. (See § III.C, infra).

**2. Delay**

The Tenants also argue that the Court should deny the MTA because Plaintiff "unduly delayed seeking leave to amend[,]" given that he "seeks to add basic standing allegations" seven weeks after the First MTD and "offers no justification for his delay." (Dkt. Nos. 58 at 3; 59 at 1–2). In response, Plaintiff argues that his "counsel's brief delay in responding to the [MTDs]

was due to the compelling reason of [counsel] traveling out of the country in Asia and other various states subsequently[,]" and in any case, Plaintiff filed the MTA "prior to the expiration of [his] deadline to respond to the [MTDs]." (Dkt. No. 60 at 1). Plaintiff further points to Defendants' failure to timely respond to the Complaint, necessitating two sua sponte extensions, to which Plaintiff did not object. (Id.)

First, Plaintiff filed the MTA on July 16, 2026, the day he was due to respond to the MTDs. (Dkt. No. 52). Although Plaintiff requested two extensions of his time to respond to the MTD, his first extension was for 21 days, and his second request, which Plaintiff only made after the Second MTD, was for fourteen days. (Dkt. Nos. 45; 52). Even if Plaintiff delayed in seeking leave to amend, that delay was minimal and reasonably due to his counsel's travel. (Dkt. Nos. 45; 52). Second, as stated above, while Plaintiff surely knew the facts underlying the New Allegations when he filed the Complaint, "it is well settled that delay is not enough standing alone to defeat a motion to amend. The party opposing the relief must demonstrate prejudice resulting from delay." R.G.N. Cap. Corp. v. Yamato Transp. USA, Inc., No. 95 Civ. 2647 (CSH), 1997 WL 3278, at *1 (S.D.N.Y. 1997). Here, we agree with Plaintiff that no party will be prejudiced by his proposed amendments because "discovery has not yet commenced[,]" "no scheduling order has [] been issued[,] and the litigation is still in its early stage." (Dkt. No. 60 at 1).

Accordingly, even if Plaintiff delayed seeking leave to amend, the delay was inconsequential and justifiable, and the Tenants have not established that they would be prejudiced by Plaintiff's proposed amendments.

**3. Bad Faith**

The Tenants also argue that the MTA should be denied because "Plaintiff's counsel appears to be using amendment in bad faith to increase attorneys' fees" and is engaging in "extortive, ethically 'questionable litigation tactics.'" (Dkt. No. 58 at 3; 59 at 2). Plaintiff denies acting in bad faith and highlights his counsel's attempts to confer with Defendants' counsel via email on July 16, 2026 before he filed the MTA. (Dkt. No. 60 at 2).

While we acknowledge Plaintiff's prior litigation history (see § III.B, supra) and are skeptical as to the accuracy of the New Allegations, we will attempt to address that skepticism by granting the Jurisdictional Discovery Request (see § III.C, infra). There is no evidence, however, that Plaintiff's counsel is engaging in bad faith here, aside from the Tenants' conclusory assertions that Plaintiff's counsel is "using amendment in bad faith to increase attorneys' fees" and is engaging in "extortive, ethically 'questionable litigation tactics[.]" (Dkt. No. 58 at 3; 59 at 2). In fact, although the Tenants dispute the sufficiency of Plaintiff's counsel's attempt to confer with Tenant's counsel before seeking to amend the Complaint, (Dkt. No. 58 at 1), the email correspondence submitted by L&M shows that Plaintiff's counsel at least attempted to confer before filing the MTA. (See Dkt. Nos. 58-2; 58-3; 60 at 2). We therefore decline to find that Plaintiff or his counsel is acting in bad faith.

* * *

Considering the liberal standard to amend set forth in Rule 15(a)(2), that this is Plaintiff's first request to amend the Complaint, and that the Tenants have not established futility, delay, or bad faith, Plaintiff may file the PAC. "[B]ecause the Court is skeptical of the accuracy of the critical factual allegations[, however], and, if those facts are not accurate, the Court lacks subject-

matter jurisdiction because the Plaintiff lacks standing, the Court will permit Defendant to take jurisdictional discovery." Tavarez, 641 F. Supp. 3d at 83. (See § III.C, infra).

### C. The Jurisdictional Discovery Request

For the reasons stated above, we grant the Tenants' Jurisdictional Discovery Request and permit limited jurisdiction discovery to resolve the status of Plaintiff's standing to sue. See Fernandez v. Cuddle Clones, LLC, No. 25 Civ. 1937 (JAV), 2026 WL 395401, at *4 (S.D.N.Y. Feb. 12, 2026) (ordering jurisdictional discovery despite finding allegations facially sufficient because plaintiff's serial filings "raises serious questions regarding [p]laintiff's sincerity"); Tavarez, 641 F. Supp. 3d at 82 n.6, 83 (granting jurisdictional discovery on the issue of standing where given that plaintiff filed 100 ADA website cases in a two day period, "the Court is skeptical of the accuracy of the critical factual allegations and, if those facts are not accurate, the Court lacks subject-matter jurisdiction because the [p]laintiff lacks standing."); Laufer v. Laxmi & Sons, No. 19 Civ. 1501 (BKS) (ML), 2021 WL 1970264, at *5–6 (N.D.N.Y. Apr. 1, 2021) (concluding that an evidentiary hearing to assess standing was appropriate because there were "significant reasons to question" whether the plaintiff actually intended to travel near each particular defendant's public accommodation given, inter alia, the "sheer number of nearly identical cases" the plaintiff filed against "hundreds of [d]efendants," the "cut-and-paste nature of [the] [p]laintiff's allegations in each of these cases," and the fact that certain allegations regarding the plaintiff's travel plans "were only added after standing questions were raised by the Court and opposing parties").

## IV. CONCLUSION

For the reasons set forth above, the Court **ORDERS** the following:

1. The MTA is **GRANTED**;
2. By **August 31, 2026**, Plaintiff shall file the PAC, which shall become the operative pleading in this case (the "Amended Complaint").
3. The Jurisdictional Discovery Request is **GRANTED**. The Court permits limited jurisdiction discovery to resolve the status of Plaintiff's standing to sue (the "Limited Jurisdictional Discovery"), which shall be completed by **October 8, 2026**. By **October 15, 2026**, the parties shall file a joint letter certifying the completion of the Limited Jurisdictional Discovery and Defendants shall indicate how and when they intend to respond to the Amended Complaint.
4. Because the Amended Complaint is the operative pleading, the MTDs are **DENIED** as moot.
5. Defendants' deadline to respond to the Amended Complaint is **HELD IN ABEYANCE** pending the completion of the Limited Jurisdictional Discovery.
6. The deadlines for L&M and Venter to respond to the 7115 Cross Claims and for L&M and 7115 to respond to the Venter Cross Claims shall continue to be **HELD IN ABEYANCE** pending the completion of the Limited Jurisdictional Discovery. (See Dkt. Nos. 36; 49).

The Clerk of Court is respectfully directed to close Dkt. Nos. 39, 46, and 55.

Dated: New York, New York
August 24, 2026

[signature]

**SARAH L. CAVE**
**United States Magistrate Judge**